UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

CHARLES CARBONE,                              25-cv-2368 (JGK)

                        Plaintiff,           **MEMORANDUM OPINION**
                                             **AND ORDER**

         - against -

THE CITY OF NEW YORK, ET AL.,

                        Defendants.
_____

**JOHN G. KOELTL, District Judge:**

        The plaintiff, Charles Carbone, is a former employee of the New York City Department of Transportation. He alleges that the City of New York and various unknown entities and individuals violated his rights under the Free Exercise Clause of the United States Constitution, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 et seq., and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107 et seq. According to Carbone, the defendants unlawfully denied his application for a religious exemption from the City's requirement that municipal workers receive the COVID-19 vaccine. The defendants now move to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion to dismiss is **granted in part and denied in part**.

**I.**

Unless otherwise noted, the following facts are taken from the plaintiff's complaint, ECF No. 3, and are accepted as true for purposes of the motion to dismiss.

**A.**

Carbone was employed by the New York City Department of Transportation ("DOT") as an assistant city highway repairman between July 2014 and February 2022. Compl. ¶¶ 5, 13. Carbone is a practicing Catholic and adheres to the religious tenets of his faith. Id. ¶¶ 25-29.

In October 2021, the New York City Department of Health and Mental Hygiene issued an order requiring all municipal employees to show proof that they had received at least one dose of the vaccine against COVID-19 by October 29, 2021, unless they received a medical or religious exemption. Id. ¶ 22. Shortly after the Department of Health issued the vaccine mandate, Carbone sought a religious exemption through the DOT's Equal Employment Opportunity Division. Id. ¶ 23. According to Carbone, "Moderna and Pfizer used aborted fetal cell lines in manufacturing their respective vaccines," and "[a]s a faithful [C]atholic, taking the COVID-19 vaccine would constitute a sin against God and a

violation of His Commandments."[1] Id. ¶¶ 27–28. Carbone supplemented his exemption application with a letter from his longtime priest, who affirmed that Carbone is a practicing Catholic. Id. ¶¶ 25–26.

As part of the exemption process, Carbone had a "five[-]minute phone call" with a DOT examiner, who "disregarded and questioned his religious objection to the COVID-19 vaccine." Id. ¶ 35. According to Carbone, the DOT examiner, "in an apparent attempt to ridicule him, questioned [Carbone's] religious beliefs by asking if he takes Tylenol," because that drug purportedly "also contain[s] aborted fetal cells." Id. ¶ 36. Carbone responded that he had taken Tylenol, but that he did not know it was purportedly manufactured using fetal cells. Id. He told the examiner that he would not take it again. Id.

The DOT ultimately denied Carbone's exemption request on November 6, 2021. Id. ¶ 33. The denial letter acknowledged that Carbone said "he would not feel good about himself" if he "put aborted baby parts in his body." Id. ¶ 34. The denial concluded: "Employee asserted his religious beliefs and provided supporting documentation from his pastor stating he is Catholic and attends church services. However, Employee[']s objections based upon

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

personal views and false facts overwhelmingly outweigh the religious beliefs he stated during the cooperative dialogue." Declaration of Brigid Lynn ("Lynn Decl."), ECF No. 20, Ex. D at 1. Carbone appealed that decision, but the DOT denied his appeal on December 6, 2021. Compl. ¶¶ 39-40. Carbone was given "three days to submit proof of vaccination." Id. ¶ 41. He failed to do so and was terminated on February 11, 2022. Id. ¶ 44.

On December 6, 2021 — shortly after the DOT denied his appeal, but before Carbone was fired — the City issued a document titled "Guidance on Accommodations for Workers." Id. ¶ 30. The document provided a checklist "intended to guide employers and managers in evaluating requests they may receive from workers for reasonable accommodations or exemptions from the requirement that they be vaccinated against COVID-19." Id. The document identified as a qualifying reason that the vaccine "was developed and/or tested using fetal cells that the worker is concerned may have been the result of an abortion." Id.

**B.**

Carbone brought this action in New York state court against the City of New York, the DOT, ten unknown entities, and ten unknown individuals.[2] Carbone alleges that the defendants discriminated against him based on his religion. He asserts violations

---

[2] Carbone voluntarily dismissed his claims against DOT on June 2, 2025. ECF No. 13.

of the NYCHRL, id. ¶¶ 51-110, ¶¶ 174-191; the NYSHRL, id.
¶¶ 111-173; and the Free Exercise Clause of the First Amendment,
id. ¶¶ 216-240. He seeks, among other forms of relief, a declaratory judgment, compensatory damages, and attorneys' fees.
Compl. 29-30.[3]

The defendants removed the action to this federal court on
March 21, 2025, and now move to dismiss the complaint for failure to state a claim.

## II.

To survive a motion to dismiss under Rule 12(b)(6), a
plaintiff must allege "enough facts to state a claim to relief
that is plausible on its face." Bell Atl. Corp. v. Twombly, 550
U.S. 544, 570 (2007). "A claim has facial plausibility when the
plaintiff pleads factual content that allows the court to draw
the reasonable inference that the defendant is liable for the
misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678
(2009). This Court accepts the allegations in the complaint as
true and draws all reasonable inferences in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d
Cir. 2007). Although the Court must construe the factual allegations in the light most favorable to the plaintiff, "the tenet

---

[3] The parties previously agreed to dismiss Count IV (violation of
the Free Exercise Clause of the New York State Constitution) and
V (violation of the Equal Protection Clause of the New York State
Constitution) with prejudice. ECF No. 17.

that a court must accept as true all of the allegations con-
tained in a complaint is inapplicable to legal conclusions." <u>Iq-
bal</u>, 556 U.S. at 678.

**III.**

Carbone brings four claims against the defendants: one
claim for a violation of the Free Exercise Clause of the United
States Constitution (Count VI); one claim for failure to accom-
modate in violation of the NYCHRL (Count I); one claim for fail-
ure to accommodate in violation of the NYSHRL (Count II); and
one claim for failure to engage in a cooperative dialogue re-
garding accommodations, also in violation of the NYCHRL
(Count III). The Court begins with Carbone's federal-law claim
and then addresses his state- and municipal-law claims.

**A.**

Carbone's sole claim arising under federal law is that the
defendants violated his rights under the Free Exercise Clause of
the United States Constitution.[4] To hold a municipal entity lia-
ble for constitutional violations under § 1983, a plaintiff must
show that a municipal policy or custom caused the violation of

---

[4] Although the plaintiff never identifies the source of his cause of
action to vindicate his rights under the Free Exercise Clause, it
is plainly 42 U.S.C § 1983 because he is seeking money damages
from the City and city officials for violations of federal law.
<u>See, e.g.</u>, <u>Bobadilla v. N.Y.C. Health & Hosps. Corp.</u>, No. 22-cv-
10594, 2023 WL 7280478, at *4 (S.D.N.Y. Nov. 3, 2023) (plaintiff
"alleges violations of the Free Exercise Clause ... under 42
U.S.C. § 1983").

the plaintiff's constitutional rights. <u>Jones v. Town of E. Haven</u>, 691 F.3d 72, 80 (2d Cir. 2012). In addition to the City of New York, the plaintiff sues various John Doe individuals and ABC corporations that participated in the alleged wrongful acts.

### 1.

The First Amendment bars the government from "prohibiting the free exercise" of religion. U.S. Const. amend. I; <u>see</u> <u>Cantwell v. Connecticut</u>, 310 U.S. 296, 303 (1940) (incorporating the Free Exercise Clause against the states). The Free Exercise Clause "protects an individual's private right to religious belief, as well as the performance of (or abstention from) physical acts that constitute the free exercise of religion." <u>Kane v. De Blasio</u>, 19 F.4th 152, 163-64 (2d Cir. 2021). But this protection "does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability." <u>Emp. Div., Dep't of Hum. Res. of Or. v. Smith</u>, 494 U.S. 872, 879 (1990). Thus, "[w]here the government seeks to enforce a law that is neutral and of general applicability," the government "need only demonstrate a rational basis for its enforcement." <u>Fifth Ave. Presbyterian Church v. City of New York</u>, 293 F.3d 570, 574 (2d Cir. 2002). Laws that are not neutral towards religion or generally applicable, however, may survive only if they are narrowly tailored to advance a compelling government

interest. Church of Lukumi Babalu Aye, Inc. v. Hialeah, 508 U.S. 520, 531-32 (1993).

The Free Exercise Clause does not require religious exemptions to vaccine mandates. We The Patriots USA, Inc. v. Hochul, 17 F.4th 266, 287-88 (2d Cir. 2021). But, as Smith teaches, "if a government entity chooses to offer exemptions to vaccine mandates, it must do so in a non-discriminatory way." Chinchilla v. N.Y.C. Police Dep't, No. 23-cv-8986, 2024 WL 3400526, at *3 (S.D.N.Y. July 12, 2024).

The Court of Appeals for the Second Circuit has laid out a framework for evaluating challenges to the constitutionality of vaccine mandates with religious exemptions. In Kane, a plaintiff brought facial and as-applied challenges to the vaccine mandate of the New York City Department of Education (the "DOE"). 19 F.4th at 164. The Court of Appeals held that the vaccine mandate was facially neutral because it applied to "all DOE staff, as well as City employees and contractors" who worked in DOE schools and thus did not "single out employees who decline vaccination on religious grounds." Id. The vaccine mandate was also generally applicable because it "applie[d] to an entire class of people." Id. at 166. Because the mandate was neutral and generally applicable, the Court of Appeals applied rational-basis review. And the mandate "plainly satisfie[d]" that standard as a

"reasonable exercise of the State's power to act to protect the public health." Id.

By contrast, the Court of Appeals held that the vaccine mandate as applied to the challengers was subject to strict scrutiny because it was neither neutral nor generally applicable. Id. at 169. The exemption procedures were not neutral because they allowed examiners to inquire into "the validity of particular litigants' interpretations" of their religious beliefs. Id. at 168. Specifically, the DOE's exemption standards provided that exemptions should be denied when "the leader of the religious organization has spoken publicly in favor of the vaccine." Id. But denying an applicant's request for a religious exemption "based on someone else's publicly expressed religious views — even the leader of her faith — runs afoul of the Supreme Court's teaching that '[i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds.'" Id. at 168 (quoting Hernandez v. Comm'r, 490 U.S. 680, 699 (1989)).

The exemption process in Kane was not generally applicable either because the DOE "had substantial discretion over whether to grant" exemption requests and exercised that discretion inconsistently. Id. at 169. Specifically, the plaintiffs had introduced evidence that "an applicant who identified as a Roman

Catholic" received an exemption, "even though the Pope ha[d] expressed support for vaccination." Id.

Carbone "does not raise a facial challenge to the City's COVID-19 vaccine mandate." Pl.'s Mem. Opp'n Mot. to Dismiss ("Opp'n Mem.") 4, ECF No. 22. Instead, he "brings an as-applied challenge based on how [the] [d]efendants administered the exemption process." Id. According to Carbone, "his exemption request was denied because of hostility to his religious beliefs and [because] other similarly situated employees were granted accommodations while he was not." Id. In Carbone's view, his allegations supposedly "mirror those deemed sufficient in Kane." Id. at 5.

**2.**

Carbone has adequately alleged that the City's vaccine mandate was neither neutral nor generally applicable as applied to his application for an exemption.

First, Carbone alleges that the DOT examiner "disregarded and questioned his religious objection to the COVID-19 vaccine" and, "in an apparent attempt to ridicule him, questioned [his] religious beliefs by asking if he takes Tylenol." Compl. ¶¶ 35–36. When the government demonstrates "hostility, animosity, distrust, [or] a negative normative evaluation" of religious beliefs, it "violates the neutrality prong of Smith." We The Patriots USA, Inc. v. Conn. Off. of Early Childhood Dev., 76 F.4th

130, 149 (2d Cir. 2023); see also Masterpiece Cakeshop v. Colo. Civ. Rights Comm'n, 584 U.S. 617, 638 (2018) ("[T]he Commission's treatment of Phillips' case violated the State's duty under the First Amendment not to base laws or regulations on hostility to a religion or religious viewpoint.").

The City responds that the Free Exercise Clause does not preclude it from structuring its exemption process in a way that is "geared towards developing a factual basis for reaching a conclusion as to whether any particular [p]laintiff's beliefs are sincerely held and religious in nature, both of which are permissible inquiries and questions of fact." Kane v. De Blasio, 575 F. Supp. 3d 435, 442 (S.D.N.Y. 2021). And it notes that several cases have held that asking about Tylenol use in particular is an appropriate method of testing an applicant's sincerity. See, e.g., Chinchilla, 2024 WL 3400526, at *4 (religious exemption process for vaccine mandates "may legitimately include questions about the use of other medications derived from fetal cell lines without running afoul of the First Amendment"); Bonilla v. City of New York, No. 22-cv-7113, 2023 WL 8372859, at *5 (S.D.N.Y. Dec. 4, 2023) ("[T]he panel asked appellants to describe their use of other medication and vaccines to assess whether their fetal stem cell-based objections to vaccination were sincerely held, not whether they were objectively legitimate.").

But Carbone never argues that the City cannot evaluate the sincerity of his religious views, or even that the City cannot ask him about his Tylenol use. He argues that the examiner, while asking the question, expressed hostility toward his religious views. Carbone also alleges that the examiner apparently ignored his response that he had "learned" that Tylenol purportedly contained fetal cells "for the first time" from his exchange with the examiner, and that "given that knowledge, [he] would not take Tylenol again." Compl. ¶ 36. Whether the examiner in fact expressed hostility in his questioning and disregarded Carbone's testimony bearing on his sincerity are factual questions that cannot be resolved on a motion to dismiss for failure to state a claim.

Second, Carbone claims that the vaccine mandate was not generally applicable as applied to him because the DOT examiner inappropriately weighed the value of his religious objection against other considerations, rather than merely testing the sincerity of his religious conviction. Opp'n Mem. 5. A law is not generally applicable under Smith if, among other things, "it invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exceptions." Fulton v. City of Phila., 593 U.S. 522, 534 (2021). In Smith itself, "the Supreme Court held that an unemployment compensation scheme with discretionary, individualized

12

exemptions lent itself to individualized government assessment of the reasons for the relevant conduct, and was thus not generally applicable." Kane, 19 F.4th at 169.

Carbone adequately alleges that the examiner in this case exercised the kind of discretion that triggers strict scrutiny. Carbone alleges that the examiner concluded that Carbone's "objections [were] based upon personal views and false facts," which "overwhelmingly outweigh the religious beliefs stated during the cooperative dialogue." Lynn Decl., Ex. D at 1. But "[i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds." Hernandez, 490 U.S. at 699.

### 3.

"Because the accommodation procedures here were neither neutral nor generally applicable, as applied," "strict scrutiny [applies] at this stage of the proceeding." Kane, 19 F.4th at 169. Under strict scrutiny, DOT's exemption process is constitutional as applied to Carbone only if it is "narrowly tailored to serve a compelling state interest." Roman Cath. Diocese of Brooklyn v. Cuomo, 592 U.S. 14, 18 (2020).

"Stemming the spread of COVID-19" qualifies as "a compelling interest." Id. DOT's exemption procedure, as applied to Carbone, is therefore constitutional if it was "narrowly

tailored to serve" the City's interest. "Narrow tailoring re-
quires the government to demonstrate that a policy is the least
restrictive means of achieving it objective." Kane, 19 F.4th
at 169. DOT's exemption procedure cannot survive strict scrutiny
as applied to Carbone, however, because denying religious accom-
modations based on the examiner's weighing of the applicant's
religious beliefs against non-religious considerations is not
narrowly tailored to serve the City's interest in preventing the
spread of COVID-19.

*    *    *

Carbone has adequately alleged a claim under the Free Exer-
cise Clause sufficient to survive a motion to dismiss. The
City's motion to dismiss Carbone's Free Exercise claim is there-
fore **denied.**

**B.**

In addition to his federal Free Exercise claim, Carbone
also brings failure-to-accommodate claims under the NYSHRL and
the NYCHRL.

The NYSHRL makes it unlawful "[f]or an employer ... because
of an individual's ... creed ... to discriminate against such
individual ... in terms, conditions, or privileges of employ-
ment." N.Y. Exec. L. § 296(1)(a). Discrimination includes "im-
pos[ing] upon a person as a condition of obtaining or retaining
employment ... any terms or conditions that would require such

14

person to for[]go a sincerely held practice or condition of his or her religion." Id. § 296(10)(a).

The NYCHRL likewise makes it unlawful "[f]or an employer ... because of the ... creed ... of any person ... [t]o discriminate against such person in compensation or in terms, conditions or privileges of employment." N.Y.C. Admin. Code § 8-107(1)(a)(3). It further provides that

> It shall be an unlawful discriminatory practice for an employer ... to impose upon a person as a condition of obtaining or retaining employment any terms or conditions, compliance with which would require such person to violate, or for[]go a practice of, such person's creed or religion ... and the employer shall make reasonable accommodation to the religious needs of such person.

Id. § 8-107(3).

Under the NYCHRL, a reasonable accommodation is an "accommodation to an employee's or prospective employee's religious observance or practice" that does not cause the employer "undue hardship." Id. § 8-107(3)(b). The state legislature amended the NYSHRL in 2019 to bring "the standard for [NYSHRL] claims closer to the standard of the NYCHRL." Livingston v. City of New York, 563 F. Supp. 3d 201, 232 n.14 (S.D.N.Y. 2021); see also Syeed v. Bloomberg L.P., 568 F. Supp. 3d 314, 345 (S.D.N.Y. 2021) ("[T]he amended NYSHRL adopts the same standard as the NYCHRL."), rev'd on other grounds, 2024 WL 2813563 (2d Cir. June 3, 2024).

Carbone's NYSHRL claim thus "rise[s] and fall[s] with his NYCHRL claim[]." Chinchilla, 2024 WL 3400526, at *7.

### 1.

"To make out a prima facie case under [the] NYCHRL," Carbone "must demonstrate that (1) he has a bona fide religious belief that conflicts with an employment requirement; (2) he informed the employer of his belief; and (3) he was disciplined for failure to comply with the conflicting employment requirement." Algarin v. NYC Health + Hosps. Corp., 678 F. Supp. 3d 497, 512-13 (S.D.N.Y. 2023).

Carbone has alleged that he has a bona fide religious belief — namely, that he is a Roman Catholic who believes as part of his faith that abortion is immoral and that it is immoral to use products manufactured with aborted fetal cells. Compl. ¶¶ 26-29. Carbone further alleges that "Moderna and Pfizer used aborted fetal cell lines in manufacturing their respective vaccines," and that "taking the COVID-19 vaccine would" therefore "constitute a sin against God and a violation of His Commandments." Id. ¶¶ 27-28.

Although the DOT found that Carbone's objections to the COVID-19 vaccine were either insincere or outweighed by other considerations, Carbone "alleges, in substance, that this determination was in error." Chinchilla, 2024 WL 3400526, at *8. Unlike the Free Exercise analysis, which asks only whether the

16

City's method for evaluating the sincerity of religious beliefs is neutral and generally applicable, the question under the first prong of the NYSHRL and NYCHRL analysis is whether Carbone's religious beliefs were actually sincere. Carbone's allegations regarding the sincerity of his beliefs "can be tested in discovery, but on a motion to dismiss they must be accepted, and" Carbone "therefore satisfies the first prong of the prima facie case." Id.

As for the second prong, Carbone alleges that "[i]n his application, [he] stressed that he [wa]s seeking an exemption due to his pro-life beliefs" and that he "believed it would violate his religious tenets to receive the vaccine given that it contained aborted fetal cells." Compl. ¶ 29.

The City responds by claiming that Carbone "did not notify [DOT] of this belief when making his [reasonable accommodation request]." Defs.' Reply Mem. Supp. Mot. to Dismiss ("Reply Mem.") 4, ECF No. 25. But at this stage, Carbone's allegations are accepted as true; whether Carbone in fact notified DOT about the specifics of his religious belief as he alleged cannot be resolved on a motion to dismiss. And in any event, the City acknowledges in its own reply brief that the DOT's letter denying Carbone's exemption recognized the nature of Carbone's religious objection. That letter acknowledged that Carbone had expressed that "he would not feel good about himself if he 'put

aborted baby parts in his body.'" Reply Mem. 5 (quoting Lynn Decl. Ex. D); <u>see also</u> Compl. ¶ 34. The City insists that this is "not, notably, a religious belief." Reply Mem. 5. But that argument strains credulity. Carbone discussed his views on abortion and products using fetal cells in the context of his religious-accommodation request. He submmitted a letter from his longtime priest attesting that Carbone was a practicing Catholic. And the denial acknowledged Carbone's religious beliefs. It would be plain to any reasonable employer what Carbone's purported religious objection was.

Similarly, the City acknowledges that the DOT examiner inquired about Carbone's use of "over-the-counter medications, like Tylenol, that may have been developed or tested using fetal cell lines," which the City argues is a "permissible means by which NYC DOT could assess the sincerity of [Carbone's] religious beliefs." Reply Mem. 5. But that argument presupposes that DOT understood Carbone's religious objection was to the purported use of fetal cells to develop the COVID-19 vaccine. Carbone has thus adequately alleged the second prong of his prima facie case.

As for the third prong, Carbone alleges that he was disciplined for failing to comply with the vaccine requirement when he was fired. Specifically, Carbone alleges that DOT denied his exemption request and gave him "three days to submit proof of

vaccination, or alternatively, he would be placed on leave with-
out pay." Compl. ¶¶ 40-41. He failed to submit proof of vaccina-
tion, and "was terminated" on February 11, 2022. Id. ¶ 44.

Carbone's allegation that he was fired for failing to com-
ply with the City's vaccine mandate "is sufficient to count as
discipline." Chinchilla, 2024 WL 3400526, at *8. The Court of
Appeals for the Second Circuit has held that "giving an employee
'the choice of resigning or being fired' amounts to an adverse
employment action for purposes of Title VII." Id. (quoting Green
v. Town of E. Haven, 952 F.3d 394, 404 (2d Cir. 2020)). And
"plaintiffs alleging discrimination under the NYSHRL and the NY-
CHRL" are entitled to "special solicitude," even as compared to
plaintiffs bringing claims under Title VII. Id.; see also Miha-
lik v. Credit Agricole Cheuvreux, 715 F.3d 102, 109 (2d Cir.
2013) ("[I]nterpretations of ... federal civil rights statutes
can serve only as a floor below which the [NYCHRL] cannot
fall.").

The City resists this conclusion by arguing that Carbone
was not disciplined; he merely failed to comply with a condition
of employment. Defs.' Mem. Supp. Mot. to Dismiss 17-18 ("MTD"),
ECF No. 19. This argument is unpersuasive because both the
NYSHRL and NYCHRL make it unlawful to "impose upon a person as a
condition of ... retaining employment ... any terms or condi-
tions that would require such person to violate or for[]go a

sincerely held practice of his or her religion." N.Y. Exec. L. § 296(10)(a); accord N.Y.C. Admin. Code. § 8-107(3). That Carbone was terminated because he failed to comply with a condition of employment is thus sufficient to satisfy the third prong under the NYCHRL and NYSHRL.

The defendants cite several cases for the proposition that employers may lawfully terminate employees for failure to satisfy conditions of employment. See, e.g., Garland v. N.Y.C. Fire Dep't, 574 F. Supp. 3d 120, 128-29 (E.D.N.Y. 2021); Broecker v. N.Y.C. Dep't of Educ., 585 F. Supp. 3d 299, 314 (E.D.N.Y. 2022); Marciano v. De Blasio, 589 F. Supp. 3d 423, 436 (S.D.N.Y. 2022). But each of those cases involved "due process claims (or analogous process-based claims arising out of state and local statutes)." Chinchilla, 2024 WL 3400526, at *9. None are "relevant because they do not involve discrimination claims." Id.

Carbone has adequately alleged that he had a bona fide religious belief, informed his employer of that belief, and was disciplined for failing to comply with a condition imposed by his employer that conflicted with that religious belief. He has therefore stated a prima case of failure to accommodate his religious beliefs under both the NYSHRL and NYCHRL.

## 2.

Under both the NYSHRL and NYCHRL, it is an affirmative defense that an employee's requested accommodation would pose an

undue burden on the employer. N.Y.C. Admin. Code § 8-107(3)(b) ("The employer shall have the burden of proof to show such hardship."); N.Y. Exec. L. § 296(10)(a) (allowing "the employer [to] demonstrate[ ] that it is unable to reasonably accommodate the employee's ... religious observance or practice without undue hardship"). Ordinarily, "[t]he pleading requirements in the Federal Rules of Civil Procedure ... do not compel a litigant to anticipate potential affirmative defenses." Abbas v. Dixon, 480 F.3d 636, 640 (2d Cir. 2007). A motion to dismiss based on an affirmative defense, however, is permissible when "the facts necessary to establish the defense are evident on the face of the complaint." Spinelli v. Nat'l Football League, 903 F.3d 185, 199 (2d Cir. 2018).

The City argues that exempting Carbone from the vaccination requirement "would have created an undue hardship for NYC DOT" because "the requested accommodation would [have] require[d] that [DOT] permit [Carbone] to potentially expose other NYC DOT employees and the public to a life-threatening virus." MTD 20. Carbone, however, alleges that he "willingly complied with alternative safety measures, including weekly testing and masking." Compl. ¶ 32. Carbone also alleges that he "primarily worked alone within the confines of his own vehicles," and thus the risk that he would transmit the virus to others was negligible. Id. ¶ 24. If these allegations are true, they would tend to

21

demonstrate that Carbone's requested accommodation was feasible and minimally disruptive. In any even, this issue could not be resolved on a motion to dismiss.

The defendants cite Algarin for the proposition that granting religious exemptions to a COVID-19 vaccine mandate would pose an undue burden. MTD 20 (citing Algarin, 678 F. Supp. 3d at 511). But as the court explained in Chinchilla, the hardship invoked by the City in Algarin "stemmed from the fact that granting a religious exemption would cause the employer to violate state law." 2024 WL 3400526, at *10; see also Algarin, 678 F. Supp. 3d at 509 ("[E]xempting Plaintiff from the mandatory vaccination requirements ... would violate the state rule, which would necessarily create an undue hardship on [the defendant]."). The defendants fail to explain how granting the plaintiff's exemption in this case would have created a similar conflict with state law.

*    *    *

Carbone has adequately alleged failure-to-accommodate claims under the NYSHRL and NYCHRL. The City's motion to dismiss Carbone's failure-to-accommodate claims is therefore **denied.**

**C.**

Finally, Carbone alleges that the City violated the NYCHRL by failing to engage in a cooperative dialogue regarding his requested religious accommodation. The NYCHRL provides that "[i]t

22

shall be an unlawful discriminatory practice for an em-
ployer ... to refuse or otherwise fail to engage in a coopera-
tive dialogue [regarding an accommodation] within a reasonable
time." N.Y.C. Admin. Code § 8-107(28)(a). The cooperative-dia-
logue process must include good-faith "written or oral dialogue
concerning the person's accommodation needs, potential accommo-
dations that may address those needs, and the difficulties that
such accommodations may pose for the covered entity." Hosking v.
Mem'l Sloan-Kettering Cancer Ctr., 126 N.Y.S. 3d 98, 103 (App.
Div. 2020). "The failure to engage in a cooperative dialogue is
independently actionable under the NYCHRL." Goldman v. Sol Gold-
man Investments LLC, No. 20-cv-6727, 2022 WL 6564021, at *5
(S.D.N.Y. Aug. 5, 2022).

Carbone alleges that "[t]here was no meaningful interactive
process or cooperative dialogue regarding [his] request for an
accommodation." Compl. ¶ 35. But that claim is both conclusory
and inconsistent with his other allegations. He acknowledges in
his complaint, for example, that DOT offered information about
its accommodation-request process, id. ¶ 23; that he availed
himself of that process, during which he spoke over the phone to
an examiner about his exemption application, id. ¶¶ 35-36; and
that he availed himself of DOT's appeals process, id. ¶ 39.

The New York State Supreme Court, Appellate Division for
the First Judicial Department has held that the New York Police

Department's virtually identical process for reviewing reli-
gious-accommodation requests satisfied the NYCHRL's cooperative-
dialogue requirement. In <u>Marsteller v. City of New York</u>, the Ap-
pellate Division held that where "the City publicly offered pub-
lic information on its process for reviewing accommodation re-
quests related to the vaccine mandate," the applicant "availed
himself of th[at] process," the employer "explained why his ap-
plication did not qualify for an accommodation," and "the par-
ties further engaged during the administrative appeals process,"
the City satisfied its cooperative-dialogue obligation under the
NYCHRL. 192 N.Y.S.3d 18, 20 (App. Div. 2023). "Subsequent deci-
sions have relied on <u>Marsteller</u> to reject cooperative dialogue
claims from other NYPD officers or expanded <u>Marsteller</u>'s reason-
ing to other City agencies." <u>Chinchilla</u>, 2024 WL 3400526, at *12
(collecting cases).

    Carbone argues that <u>Marsteller</u> is distinguishable because
the applicant "received a denial letter from the NYPD explaining
in detail why his request failed" and "participated in an ap-
peals process in which his documentation and request were re-
viewed by a Citywide Panel." Opp'n Mem. 14. But Carbone makes
similar allegations. He expressly alleges that DOT provided him
with a written denial letter. Compl. ¶ 34 ("In its denial, the
NYC DOT summarily stated that '[e]mployee's request determined
not to be based upon a sincerely held religious belief but

24

rather upon personal belief and false facts.'"); id. ¶ 38 ("The NYC DOT's denial letter indicated that Plaintiff could file an appeal to the denial decision."). Likewise, he alleges that he appealed that decision to the DOT. Id. ¶ 39.

Carbone's argument essentially is that he was entitled to more dialogue and closer consideration of his application. But New York courts have not interpreted the NYCHRL's cooperative-dialogue requirement so expansively. Carbone's cooperative-dialogue claim under the NYCHRL is therefore **dismissed without prejudice.**

### IV.

The Court has considered all the arguments raised by the parties. If any argument was not specifically addressed above, it is either moot or without merit. For the foregoing reasons, the defendants' motion to dismiss is **granted in part and denied in part.** Count III (failure to engage in a cooperative dialogue in violation of NYCHRL) is **dismissed without prejudice.** The defendants' motion to dismiss Counts I (failure to accommodate in violation of NYCHRL), II (failure to accommodate in violation of

NYSHRL), and VI (violation of the Free Exercise Clause of the First Amendment of the United States Constitution) is **denied.**

The Clerk is directed to close ECF No. 18.

**SO ORDERED.**

Dated:      New York, New York
              November 17, 2025

                              John G. Koeltl
                      United States District Judge